UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES MICHAEL KENNY,

                Plaintiff,                    Case No. 1:16-cv-260

v.                                       Honorable Janet T. Neff

MICHAEL JOHN BARTMAN, JR. et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim.

## Factual Allegations

Plaintiff James Michael Kenny currently is a pretrial detainee at the Clinton County Jail (CCJ).  He sues the following Defendants:  private citizens Michael John Bartman, Jr., Ted Allen Goodman, and Adam Joseph Goodman; Clinton County Prosecuting Attorneys Charles Sherman and Anthony Michael Ameche; 65A District Court Magistrate Dan Skorich; Chief Judge Randy L. Tahvonen; 65A District Court Judge Michael E. Clarizio; defense attorney Ronald A. Zawacki; Clinton County Sheriff Wayne Kangas;  Clinton County Sheriff Department (CCSD) Deputies Eric Thompson, Zach Smith, (unknown) Johnson and Sean Dush; CCSD Sergeant Christopher Crawford; Clinton County Jail (CCJ) Captain Monica Hoskins; CCJ Sergeant (unknown) Wirth; CCJ Officer Michelle Elizabeth Monroe; City of Portland Police Officer Star Thomas; Portland Police Chief Robert Bauer; Michigan State Police Sergeant Christian Clute; and Governor Rick Snyder.

Plaintiff's 64-page complaint[1] alleges numerous ostensible violations of his constitutional rights related to his arrest on May 29, 2015 and ongoing prosecution for aggravated stalking, MICH. COMP. LAWS § 750.411, felonious assault, MICH. COMP. LAWS § 750.82, and resisting and obstructing the police, MICH. COMP. LAWS § 750.81d, for which he faces a potential life sentence as a fourth felony offender, MICH. COMP. LAWS § 769.12.  (*See* Compl., ECF No. 1, PageID.24.)  In addition, Plaintiff makes a number of allegations about violations of his rights during his confinement at the CCJ, while he awaits trial.  Plaintiff also alleges violations of state statutes and common law.

---

[1]Plaintiff has filed a motion (ECF No. 3) seeking leave to file a complaint containing 64 pages, which he concedes is far longer than most complaints.  The Court grants his motion.

According to the complaint, a personal protection order that was issued on January 21, 2015 barred Plaintiff from contacting Defendant Monroe.  During the week of May 22, 2015, Plaintiff was camped in a woodsy area near the River Walk in Portland, Michigan.  He took many walks in the Portland area.  Plaintiff acknowledges that, on May 25, 2015, he went to the apartment building at which Defendant Monroe formerly lived, but he found that her apartment was rented to a different person.  During another walk on May 29, 2015, at about 3:20 p.m., Plaintiff went to the home of Defendant Bartman, whom Plaintiff had previously seen eating lunch with Defendant Monroe on May 23, 2015, and with whom he knew Monroe lived.  Defendant Bartman allegedly used foul language against Plaintiff, telling Plaintiff that he was not allowed near Bartman's house.  According to Plaintiff, Bartman charged at Plaintiff, and Plaintiff pushed Bartman down.  The two then wrestled into Bartman's yard, and Plaintiff tried to place Bartman in a headlock.  Bartman allegedly became frustrated and threatened to shoot Plaintiff.  Bartman went to his truck, and Plaintiff ran away, dropping a butter knife.  Bartman got into his truck and drove down the road and then returned to his driveway.  Plaintiff came out of the woods, and Bartman backed up his truck, jumped out, and started chasing Plaintiff.  Bartman allegedly fired three shots at Plaintiff as Plaintiff ran away.

While running away, Plaintiff was unaware that the police had been called and were pursuing him.  At 4:55 p.m., an hour-and-a-half after the shooting, Plaintiff came out of the woods behind W. Looking Glass Road.  Plaintiff claims that he was "ambush[ed]" by police, who had surrounded the area.  (*Id.*, PageID.13.)  Plaintiff first encountered citizen Ted Goodman, who told Plaintiff to get down on the ground.  Plaintiff refused, after which Defendant Officer Thomas ordered him to the ground.  Citizens Ted and Adam Goodman assisted Defendant Thomas, holding

Plaintiff down while Thomas handcuffed him.  Plaintiff then was ordered to stand up and face the CCS cruiser, and Defendant Thomas emptied Plaintiff's pocket, finding a camera, a sharp folding knife, a light-and-sound keychain, and light blue latex gloves.  When Plaintiff asked why he was being arrested, an unidentified state police officer stated that it was "because of pulling out a butter knife on a guy."  (*Id.*, PageID.14.)

Defendant Thompson placed Plaintiff in a police cruiser, and Defendant Smith drove the cruiser away.  At Defendant Dush's instruction, Defendant Smith drove Plaintiff to Defendant Monroe's house, where Defendants Monroe and Bartman identified Plaintiff.  Smith then drove Plaintiff to the CCSD, where he was escorted into an interview room.

Plaintiff alleges that, during his first two weeks at CCJ, he suffered from flashbacks caused by having been shot at by Bartman.  Plaintiff alleges that he described both what had happened and his flashbacks to a jail social worker on June 3, 2015, and to a psychiatrist and nurse at the Center for Forensic Psychiatry on July 14, 2015.

Plaintiff complains that Defendants Bartman and Monroe provided false evidence against him; that Defendant Thompson failed to properly investigate the incident; that Defendants Ted and Adam Goodman held Plaintiff down while Defendant Thomas falsely arrested Plaintiff; that Defendants Thompson, Smith and Dush participated in the false arrest; that Plaintiff was framed for pulling out a butter knife on Bartman; that Defendant Ameche engaged in ex parte communications with Defendant Skorich to obtain a warrant; that Defendant Skorich slandered Plaintiff in court; that Defendant Thompson committed perjury to get an arrest warrant; that Defendant Zawacki provided ineffective assistance of counsel; that Defendants Ameche and Sherman and the courts secured perjured testimony, ignored Plaintiff's six pro se motions, and failed to provide him copies of

- 4 -

evidence; that Defendant Tahvonen failed to cure the ineffective assistance of counsel; that Defendants Clarizio and Tahvonen violated Plaintiff's right to represent himself by requiring defense counsel to remain at the defense table as stand-by counsel; that Plaintiff has been denied a speedy trial; that Defendant Clute defamed Plaintiff and violated his First Amendment rights by preparing inaccurate police reports; that Defendant Monroe defamed Plaintiff and perjured herself; that Defendants Hoskins, Wirth, and Kangas denied him access to the courts by denying legal research, copying and writing materials; that Defendants Kangas, Tahvonen, Ameche and Sherman denied him access to the courts by adopting and executing the policy of maintaining no law library at CCJ; that Defendants Wirth and Hoskins refused to launder the clothes Plaintiff intended to wear to a court appearance; that Defendants Kangas and Tahvonen denied him a right to petition government by approving CCJ policies that fail to create a legitimate grievance process; that Defendants Bauer, Ameche and Clarizio failed to prosecute Defendants Bartman and Monroe for their conduct; that Defendant Snyder has failed to adopt reasonable restrictions on the Second Amendment; and that Defendant Ameche and unknown police officers are violating his right to privacy by keeping a copy of the pictures found on Plaintiff's camera.

For relief, Plaintiff seeks an immediate injunction for unspecified relief, together with compensatory and punitive damages.

## Discussion

### I.     Immunity

Plaintiff claims that Magistrate Skorich violated his right to due process and a fair trial by engaging in an ex parte probable cause determination to issue a warrant.  He alleges that Judges Clarizio and Tahvonen violated his right to represent himself by requiring stand-by counsel

to remain at the defense table.   He also alleges that Defendant Ameche engaged in ex parte communications with Magistrate Skorich to obtain a warrant, that Ameche and Sherman unlawfully prosecuted him, failed to investigate, and introduced perjured testimony against him.   All five Defendants are entitled to immunity.[2]

### A.    Judicial immunity

Generally, a judge is absolutely immune from a suit for monetary damages.   *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).   Absolute judicial immunity may be overcome in only two instances.   First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity.   *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it").   Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.   *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity.   There is no doubt that, in committing the complained of conduct, Defendants Skorich, Clarizio and Tahvonen were acting within their judicial capacities.   Accordingly, they are absolutely

---

[2]Plaintiff also alleges that Defendants Kangas, Tahvonen, Ameche, and Sherman are liable for denying him access to the courts, because they maintain a policy of having no law library.   I will address *infra* the access-to-the-courts claim, which arguably is not covered by judicial or prosecutorial immunity.

immune from liability, and Plaintiff may not maintain an action for monetary damages against him. 28 U.S.C. § 1915(e)(2)(B)(iii).

Moreover, injunctive relief is also not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, Plaintiff's claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

### B.    Prosecutorial immunity

Defendant Prosecutors Ameche and Sherman also are entitled to immunity in this action. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police

- 7 -

officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137.  In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process.  *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997).

Plaintiff complains that Defendants Ameche and Sherman decided to prosecute him, rather than prosecuting Defendant Bartman for allegedly firing three shots at Plaintiff.  Under *Imbler*, 424 U.S. at 431, Ameche and Sherman are entitled to absolute immunity for their charging decisions. In addition, Plaintiff lacks standing to challenge the failure of Ameche and Sherman to prosecute Bartman.  A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Diamond v. Charles*, 476 U.S. 54, 64 (1986).  Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another.  *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).

Moreover, Defendant Ameche clearly was acting within the traditional functions of a prosecutor in appearing before Defendant Skorich to seek a warrant.  He therefore is entitled to immunity for those actions.  Finally, although unlawful actions taken in a prosecutor's investigatory capacity are not protected by absolute immunity, Plaintiff does not identify any unlawful investigatory conduct taken by Ameche and Sherman; he complains only that they *failed* to take certain investigatory actions that Plaintiff believes should have been taken.

In sum, Plaintiff's claims against Defendants Ameche and Sherman for their prosecution of Plaintiff, their pursuit of a warrant, and their failure to prosecute Bartman and

Hoskins either wholly fail to state a claim or allege conduct for which Ameche and Sherman are entitled to absolute prosecutorial immunity.

II.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

- 9 -

### A.   Color of Law

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."  *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Plaintiff has not presented any allegations by which the conduct of Defendants Ted Goodman, Allen Goodman and Bartman could be fairly attributed to the State.  All three individuals are merely private citizens who took actions with which Plaintiff disagrees.  Plaintiff makes no allegation that would establish a nexus between the conduct of Bartman and the state.  Moreover, although the Goodmans appeared to have delayed Plaintiff so that the police could make Plaintiff's arrest, there exists no allegation that the police actually requested that assistance or that the Goodmans had any state authorization for their actions.  Accordingly, he fails to state a § 1983 claim against Defendants Bartman and the Goodmans.

Moreover, although Defendant Monroe is an officer at the CCJ, Plaintiff does not allege that she was acting in that capacity at the time she was a witness against him.  Instead, Monroe apparently had obtained a personal protection order against Plaintiff because of his stalking

activity.   According to Plaintiff's own allegations, Monroe was not on duty at the time of the conduct alleged in the complaint, but instead is a mere witness in the context of Plaintiff's criminal prosecution for violating a personal protection order.  As a consequence, Monroe's actions to provide a statement cannot be deemed to have been made under color of state law.  Because Plaintiff makes no allegations against Defendant Monroe concerning her actions taken as a CCJ officer, she is not subject to suit under § 1983.

Finally, Plaintiff cannot show that his court-appointed attorney acted under color of state law.  In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel performs a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State.  The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness.  But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client."  This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted).  The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender.  *Id.* at 321.  The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program.  *Id.* at 323.  The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused.  *Id.* at 325.  Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control.  *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions.  *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional

- 11 -

functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003).  Accordingly, Defendant Zawacki, as Plaintiff's court-appointed attorney, did not act under color of state law.

For all these reasons, Plaintiff fails to state a claim under § 1983 against Defendants Ted Goodman, Allen Goodman, Bartman, Monroe and Zawacki.[3]

### B.      Access to the Courts

Plaintiff alleges that Defendants Hoskins, Wirth and Kangas denied him access to the courts by failing to provide him with legal research, copying, and writing materials.  He further alleges that Defendants Kangas, Tahvonen, Ameche and Sherman denied him access to the courts by signing and executing the policy that CCJ would not have a law library.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See  Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430

---

[3]Plaintiff also brings state-law defamation claims against Defendanst Bartman and Monroe, which will be dismissed without prejudice, as discussed *infra*.

U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).  In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.

Plaintiff's conclusory allegation that he has been deprived of access to the courts because the CCJ lacks a law library fails to state a claim.  Plaintiff has offered no legally supportable reason why he cannot file an action, and he makes no factual allegation suggesting that his criminal defense has been injured by the lack of a law library.  The right of access to the courts has never been equated with the access of legal materials at the prison library.  *Walker*, 771 F.2d at 932; *see also Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury). While Plaintiff desires a law library, by his own admission, he has a stand-by attorney who can aid him in his defense.  Moreover, Plaintiff's submissions of a 64-page complaint, 16 pages of exhibits, and two motions make clear that Plaintiff has not been prevented from filing a civil rights complaint and that he has not been denied access to writing materials and necessary copies.  Instead, his allegations suggest only that he believes the *quality* of his lawsuit may have been impaired, not that he was unable to file a lawsuit at all.  Even though *Bounds* gave inmates the tools

to attack their sentences and challenge their conditions of confinement, the inability of an inmate to become a "litigating engine" is "simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 at 353-54.  Plaintiff's claim that he is entitled to superior legal resources is not the type of claim protected by the right of access to the court, i.e., direct appeals from convictions, habeas petitions, or civil rights actions.  *Lewis*, 518 U.S. at 353-54.  Rather, Plaintiff's claim is that he is entitled to be a "litigating engine," which this Court will not allow.  Because Plaintiff cannot show actual injury or that he has suffered any litigation-related detriment, Plaintiff therefore fails to state a claim for denial of access to the courts.

### C.    Right to File Grievances

Plaintiff contends that CCJ lacks a legitimate grievance procedure.  He argues that Defendant Hoskins and unspecified others either denied his grievances, failed to process his grievances, or failed to resolve his grievances in a satisfactory manner.  Plaintiff also alleges that the absence of an effective grievance procedure violates his First Amendment right to petition government for redress of grievances.  His allegations also arguably implicate the Due Process Clause.

Plaintiff has no due process right to file or successfully pursue a prison grievance. The courts repeatedly have held that there exists no constitutionally protected right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan

- 14 -

law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' actions have not violated Plaintiff's First Amendment right to seek redress of his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's continuing ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). In addition, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim about the CCJ grievance process.

### D.     Second Amendment

Plaintiff's arguments concerning the Second Amendment are wholly unintelligible. Plaintiff does not allege that his right to bear arms was unconstitutionally infringed. Instead, he argues that Defendant Snyder is liable for the passage of laws that allow some individuals and classes of people greater freedom in carrying arms than other persons, who either have a personal protection order against them and/or have previously been convicted of a felony. Plaintiff also

generally objects to lenient gun laws, and he proposes a series of new criminal offenses respecting the possession and use of guns. He also suggests supplemental legislation in the subject areas of abortions, alcohol consumption, homosexuality and marijuana usage. He broadly contends that Michigan laws (or the absence of such laws) have somehow violated the Second Amendment, though he does not explain his legal theory.

Plaintiff lacks standing to challenge Governor Snyder's actions in passing or not passing any particular piece of legislation. In order to invoke federal jurisdiction, a plaintiff must establish the three elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, he must show "injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent not conjectural or hypothetical." *Id.* at 560 (internal quotations and citations omitted). Second, he must show a causal connection between the injury he suffered and the conduct about which he complains. *Id.* Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Plaintiff's vague allegations fail at each step. Plaintiff does not even allege that Michigan statutes governing the right to carry arms caused him injury. His arrest and prosecution had nothing to do with his right to possess a firearm, and his lack of a firearm is not conceivably related to the charges against him. Indeed, Plaintiff expressly represents that he has no need of a firearm for any purpose. (Compl., ECF No. 1, PageID.51.) In addition, Bartmann's possession and use of a firearm, whether lawful or unlawful, had no impact on the legality of Plaintiff's own conduct. Moreover, Plaintiff's suggestion of additional legislation governing abortions, alcohol consumption, homosexuality and marijuana use (Compl., ECF No.1, PageID.56-57) are even less

- 16 -

related to Plaintiff's charged offense.  Plaintiff has alleged no concrete and particularized injury caused by the absence of legislation, and any action by this Court would not redress any injury suffered by Plaintiff.  He therefore lacks standing to bring his claims about legislation.

### E.    Failure to Wash Clothing

Plaintiff alleges that Defendants Wirth and Hoskins refused to wash the clothes that Plaintiff wished to wear to a court proceeding.  Plaintiff does not identify the right allegedly violated by Defendants' refusal to wash his clothes.  Arguably, he may intend to suggest that his right to a fair trial may be violated by being forced to wear stigmatizing clothing.  Alternatively, he may intend to argue that Defendants' conduct violated his right to basic hygiene, in violation of his rights under the Fourteenth Amendment.

The Supreme Court has recognized that compelling an accused to stand trial before a jury in prison garb may deprive a defendant of his right to a fair trial.  *See Estelle v. Williams*, 425 U.S. 501, 503-04 (1976).  Similarly, the Court has held that other practices, such as shackling or gagging a defendant before a jury, may also unfairly prejudice an accused.  *Illinois v. Allen*, 397 U.S. 337 (1970).  A prison, however, is not required to purchase or provide alternate clothing, even for a jury trial.  *United States v. Williams*, 641 F.3d 758, 767 (6th Cir. 2011).

In the instant case, Plaintiff alleges only that he wished to have his clothing washed for a pretrial appearance.  His allegations fall far short of demonstrating that he was required to wear stigmatizing clothing.  More significantly, Plaintiff fails entirely to allege that a jury has been exposed to the unwashed clothing.  Plaintiff therefore fails to demonstrate that Defendants violated his right to a fair trial by refusing to wash his clothing for a pretrial hearing.

Plaintiff's allegations also fail to state a claim under the Fourteenth Amendment. In *Richko v. Wayne Cty.*, ___ F.3d ___, 2016 WL 1533997 (6th Cir. Apr. 15, 2016), the Sixth Circuit reiterated that pretrial detainees protected by the Fourteenth Amendment are governed by the same deliberate-indifference standard as prisoners who are protected by the Eighth Amendment. *Id.* at *5 (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the

difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).  *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).  Plaintiff's allegation that he was required on one occasion to either wear clothing that was not as clean as he would have liked or wear an alternate set of clothing falls far short of conditions intolerable for prison confinement.

### F.    Ninth Amendment -- Right to Privacy

Plaintiff complains that Defendants have improperly confiscated Plaintiff's camera. He alleges that the camera contains family pictures, to which Defendants have no right.  Plaintiff alleges that, on November 23, 2015 at a pretrial conference, Defendant Tahvonen asked Plaintiff to agree to a delay in his trial, so that the contents of his camera could be examined for pictures that would possibly be helpful to his defense.  Plaintiff learned on January 8, 2016 that the camera included no pictures that were either incriminating or favorable to Plaintiff.  Plaintiff therefore asserts that no one has a right to retain copies of his pictures.

The Sixth Circuit recognizes a right to informational privacy under the Fourteenth Amendment, but unlike other circuits, "'[it] has developed and applied a different approach to assessing informational privacy claims' that 'requires that the asserted privacy interest implicate a fundamental right.'"  *Lee v. City of Columbus*, 636 F.3d 245, 259 (6th Cir. 2011) (quoting *Lambert v. Hartman*, 517 F.3d 433, 442 (6th Cir. 2008)).  The court has repeatedly rejected the idea that there is "a general constitutional right to non-disclosure of private information."  *Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2008); *see, e.g.*, *Lee*, 636 F.3d at 261 (city's requirement that employees

returning from sick leave disclose the "nature of [their] illness" to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *J.P. v. DeSanti*, 653 F.2d 1080, 1091 (6th Cir. 1981) (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various agencies).

A plaintiff alleging a violation of his right to informational privacy must demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (quoting *DeSanti*, 653 F.2d at 1090). Only after a fundamental right is identified should the court proceed to the next step of the analysis–balancing the government's interest in disseminating the information against the individual's interest in keeping the information private. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998). Applying these standards, the Sixth Circuit has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, *see Kallstrom*, 136 F.3d at 1061; and (2)

where the information released was of a "sexual, personal, and humiliating nature." *See Bloch*, 156 F.3d at 684; *see also Lambert*, 517 F.3d at 440.

Plaintiff does not even allege that any Defendant has disseminated the content of the pictures on his camera. Indeed, Plaintiff expressly represents that he has no idea whether anyone possesses a copy of any picture. He therefore wholly fails to allege any injury, much less an injury that could lead to bodily harm or of a "sexual, personal, and humiliating nature." *See Bloch*, 156 F.3d at 684. He therefore fails to state a constitutional claim concerning a violation of his privacy.

## G.    False Arrest

Plaintiff alleges that Defendants Thomas, Thompson, Smith and Dush participated in his arrest and/or gave testimony to support issuance of a warrant. It is beyond debate that an arrest made without probable cause violates the Fourth Amendment. *See, e.g., Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). Hence, to determine whether Plaintiff was arrested in violation of his constitutional rights, we must determine whether probable cause existed. "The test for probable cause is not reducible to 'precise definition or quantification.'" *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Probable cause is a "practical and common-sensical standard" based on "the totality of the circumstances." *Id.* Probable cause exists where the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing . . . that the suspect committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Aggravated stalking consists of the crime of "stalking," M.C.L. § 750.411h(1)(d), and the presence of an aggravating circumstance specified in M.C.L. § 750.411i(2). *See People v.*

- 21 -

*Threatt*, 657 N.W.2d 819, 820 (Mich. Ct. App. Oct. 25, 2002).  Those aggravating circumstances

include the following:

> (a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.
>
> * * *
>
> (c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim.

M.C.L. § 750.411i(2)(a) and (c).  Felonious assault, the other offense for which Plaintiff was

arrested, is defined as follows:

> [A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony . . . .

MICH. COMP. LAWS § 750.82(1)

> While Plaintiff generally alleges that his arrest was false, he wholly fails to articulate

facts in support of his claim.  Although Plaintiff disputes some of the incidents on which Defendant

Monroe accused him of stalking and obtained a personal protection order, he acknowledges that she

claimed that Plaintiff had made multiple unwanted contacts with her, that Plaintiff had been

transferred from the prison because of his continual efforts to contact her, and that he sent her a letter

or letters at her home address.  Whether true or not, Monroe's statements were provided to police

and formed part of the basis for Plaintiff's arrest.  In addition, Plaintiff acknowledges in the

complaint that he went to the place that Monroe had formerly lived, in an attempt to contact her, and

that, knowing that she lived with Bartman, Plaintiff approached Bartman's home.  Plaintiff also

admits that Defendant Monroe had obtained a personal protection order against him.  Moreover,

Plaintiff acknowledges in his complaint that he dropped a butter knife in his encounter with Bartman and that Defendants Bartman and Monroe told police that Plaintiff had pulled a knife on Defendant Bartman. These facts were sufficient to create probable cause for Plaintiff's arrest on aggravated stalking, MICH. COMP. LAWS § 750.411, and felonious assault, MICH. COMP. LAWS § 750.82. On the facts alleged in the complaint, therefore, Plaintiff utterly fails to state a claim of false arrest.

### H.    Perjury

Plaintiff alleges that Defendant Thompson committed perjury in providing testimony to support issuance of a warrant for Plaintiff's arrest, arguably in violation of Plaintiff's right to substantive due process.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

Plaintiff provides limited facts supporting his claim, but he states that, in seeking the warrant, Thompson testified that he had learned that Plaintiff had a conversation with Bartman and Monroe, though Thompson admitted he was uncertain what Plaintiff had said, except to the extent that he understood the content was unpleasant. Plaintiff alleges that Thompson also testified that

- 23 -

Plaintiff had pulled out a butter knife on Bartman.  Plaintiff complains that Thompson did not interview neighbors or seek out additional unspecified information before seeking the warrant.

Nothing about Thompson's testimony indicates misbehavior of any kind, much less behavior rising to the level of a substantive due process violation.  According to Plaintiff's own allegations, victims Bartman and Monroe had given statements about the confrontation between Plaintiff and themselves and about Plaintiff's use of a butter knife.  In fact, Plaintiff admits being at the location and, while he claims that the butter knife merely fell from his pocket, he acknowledges that it was left at the scene.  He also acknowledges that he pushed Bartman down.

Plaintiff's claim that Thompson committed perjury is wholly unsupported.  Instead, Plaintiff merely disagrees with the precise contours of his interaction with Bartman, as reported to Thompson.  Plaintiff's allegations against Thompson therefore fail to state a substantive due process claim.

## I.      Supervisory Liability

Plaintiff appears to suggest that Sheriff Kangas, Police Chief Bauer, and Governor Snyder are liable for the allegedly unconstitutional acts of their subordinates.  He makes no other factual allegations against Kangas, Bauer or Snyder.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.

*Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Kangas, Bauer or Snyder engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

          III.    <u>State-Law Claims</u>

        Plaintiff alleges a variety of state-law claims, including assault and defamation, against many Defendants.  Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

        Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the

court will dismiss the remaining state-law claims.  *Id.*  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.[4]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will dismiss Plaintiff's state-law claims without prejudice.  The Court also will deny Plaintiff's Motion for Photocopy Services as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

---

[4]Also pending before the Court is Plaintiff's Motion for Photocopy Services (ECF No. 4), in which he seeks copies for service of his complaint.  In light of the Court's dismissal of the complaint, the motion for photocopies will be denied as moot.

A Judgment consistent with this Opinion will be entered.


Dated:  May 31, 2016                    /s/ Janet T. Neff
                                        Janet T. Neff
                                        United States District Judge